# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MARY HEPFNER, Individually and on Behalf of All Others Similarly Situated, | Case No.: 18-cv-1112 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| REV-1 SOLUTIONS LLC, REVONE COMPANIES, LLC, MED-1 SOLUTIONS LLC, EPI FINANCE GROUP LLC, COMPLETE BILLING SERVICES LLC, CONNECTTEC LLC, THE WELLFUND LLC, PERFINITI INSURANCE II, and WILLIAM JOSEPH HUFF, | **Jury Trial Demanded** |
| Defendants. | |

## INTRODUCTION

1.  This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2.  The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.  Plaintiff Mary Hepfner ("Plaintiff") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5.      Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from consumer transaction that included agreements to defer payment.

6.      Defendant REV-1 Solutions, LLC ("Rev-1") is a foreign limited liability company with its principal place of business located at 517 US Hwy 31 N, Greenwood, Indiana 46142.

7.      Rev-1 is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      Rev-1 is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.      Rev-1 is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10.     Defendant RevOne Companies, LLC ("RevOne Companies") is a foreign limited liability company with its principal place of business located at 5922 Burnham Road, Naples, Florida 34119.

11.     Rev-1 is one of seven "divisions" of the "RevOne Companies," which were "founded in 2003 as a collections and account receivable management company." http://revonecompanies.com/about-us/company-profile.

12.     The other "divisions" include Defendants MED-1 Solutions LLC ("Med-1"), EPI Finance Group LLC ("EPI"), Complete Billing Services LLC ("CBS"), ConnectTec LLC

2

("ConnectTec"), The WellFund LLC ("Wellfund"), and Perfiniti Insurance II LLC ("Perfiniti") (collectively, the "RevOne Divisions").

13. Med-1, EPI, CBS, ConnectTec, Wellfund, and Perfiniti are foreign limited liability companies.

14. Wellfund's principal offices are located at 5922 Burnham Road, Naples, Florida 34119.

15. Aside from Wellfund, the remaining RevOne Divisions' principal offices are located at 517 U.S. Hwy 31 N, Greenwood, Indiana 46142.

16. Upon information and belief, aside from Wellfund, the remaining RevOne Divisions share their principal offices with RevOne.

17. As they are registered with the Indiana Secretary of State, the RevOne Divisions (including Rev-1) all have the same principal agent: Defendant William Joseph Huff ("Huff").

18. Upon information and belief, Huff is a natural person who resides at 5922 Burnham Road, Naples, Florida 34119.

19. According to the Florida Division of Corporations, Huff is the sole manager and registered agent in Florida for RevOne Companies and Wellfund. http://search.sunbiz.org/Inquiry/CorporationSearch/ByName: Search – RevOne, Wellfund.

20. Upon information and belief, RevOne Companies and some, or all, of the RevOne Divisions act as corporate shell companies or corporate holding companies.

21. Upon information and belief, RevOne Companies and the RevOne Divisions share common shareholders and directors.

22. Upon information and belief, RevOne Companies and some, or all, of the RevOne Divisions are undercapitalized, relying on RevOne Companies, other RevOne Divisions, or Huff to pay their operating expenses.

23. Upon information and belief, some, or all, of RevOne Companies and the RevOne Divisions do not hold shareholder meetings and do not maintain formal corporate record-keeping.

24. Upon information and belief, RevOne Companies and some, or all, of the RevOne Companies were organized and continue to be used, in whole or in part, for the purposes of promoting fraud, injustice, or illegal activities, including artificially deflating the net worth of certain RevOne Divisions (including Rev-1) in order to reduce those companies' FDCPA class action liability. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting a debt collector's class action liability to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector"); *see also Sanders v. Jackson*, 209 F.3d 998, 999 (7th Cir. 2000) ("net worth" means "book value net worth" not "fair market net worth").

25. Upon information and belief, some, or all, of the RevOne Divisions are used to pay the obligations of other RevOne Divisions.

26. Upon information and belief, some, or all, of RevOne Companies', RevOne Divisions', and Huff's assets and affairs are commingled.

27. Upon information and belief, some, or all, of RevOne Companies and the RevOne Divisions, fail to observe required corporate formalities, including the holding of shareholder meetings, maintaining bylaws, and other corporate formalities.

28. Upon information and belief, some, or all, of RevOne Companies' and the RevOne Divisions' shareholders---including William Joseph Huff---engage in acts or conduct ignoring, controlling, or manipulating the corporate form, including by artificially reducing Rev-1's net worth.

29. Upon information and belief, some, or all, of RevOne Companies and the RevOne Divisions are not operated separately, but rather are managed as one enterprise through their

4

interrelationship to cause illegality, fraud, or injustice or to permit Rev-1 to escape liability arising out of an operation conducted Rev-1 for the benefit of the RevOne Companies and William Joseph Huff.

30. Upon information and belief, the RevOne Companies and the RevOne Divisions together are a single business enterprise corporation that has intermingling of business transactions, functions, property, employees, funds, records, and corporate names in dealing with the public. *See* http://revonecompanies.com/about-us/company-profile.

31. Where, as here, similar corporate names have been used, the corporations share common principal officers and directors, were organized for the same purposes, and are located in the same offices, courts may disregard the separateness of the affiliated corporate entities, and hold the corporations jointly and severally liable for one anothers' debts.

## **FACTS**

32. On or about July 26, 2017, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "COLUMBIA ST. MARY'S" ("CSM"). A copy of this letter is attached to this complaint as Exhibit A.

33. Upon information and belief, the alleged debt identified in Exhibit A was a medical debt and, thus, incurred for personal, household, and family purposes.

34. Plaintiff was not required to pay for the medical services at the time services were rendered. Instead, the creditor, or a billing agent, mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment'").

5

35. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

36. Upon information and belief, Exhibit A is a form debt collection letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

37. Exhibit A includes the following:

> This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org.

Exhibit A.

38. The above language on a collection letter is a representation that the debt collector holds a Wisconsin Collection Agency License, pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code § DFI-Bkg. 74.

39. On the date Exhibit A was mailed, REV-1 did not, in fact, hold a Wisconsin Collection Agency License.

40. REV-1 was not licensed by the Office of the Administrator of the Division of Banking or any other Wisconsin governmental agency at the time Exhibit A was sent to Plaintiff.

41. REV-1 is not listed on the Division of Banking's website that lists all collection agencies that currently hold a Wisconsin collection agency license. http://www.wdfi.org/fi/lfs/licensee_lists/Default.asp?Browse=CA (visited August 16, 2017).

42. A representative of the Division of Banking confirmed to Plaintiff's counsel over the telephone that REV-1 held a Wisconsin collection agency license from Oct. 1, 2012 through June 30, 2017 but did not hold a license on the date that Exhibit A was mailed.

43. A false statement about a debt collector's licensing status is a material false statement. "It suggests that [the debt collector] has been approved by the state, thereby enhancing in the mind of the unsophisticated consumer [the debt collector's] legitimacy and power to collect the debt." *Radaj v. ARS Nat. Services, Inc.*, No. 05 C 773, 2006 U.S. Dist. LEXIS 68883

at *10; 2006 WL 2620394 at *3 (E.D. Wis. Sep. 12, 2006); *Seeger v. Aid Assocs.*, 2007 U.S. Dist. LEXIS 22824 at *13, 2007 WL 1029528 (E.D. Wis. Mar. 29, 2007) ("this court believes that the false statement used by Plaza that it was licensed by the state of Wisconsin, is precisely the kind of misrepresentation that Congress sought to prohibit when it passed the FDCPA.").

44. Plaintiff was confused by Exhibit A.

45. The unsophisticated consumer would be confused by Exhibit A.

46. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

47. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA and WCA*

48. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading

7

information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

49. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

50. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

51. 15 U.S.C. § 1692e(1) specifically prohibits the false representation that "the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof."

52. 15 U.S.C. § 1692e(9) specifically prohibits "the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

53. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

54. Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not."

## COUNT I – FDCPA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Exhibit A falsely states that: "This collection agency is licensed by the Division of Banking" for the State of Wisconsin.

57. Exhibit A falsely represents to consumers that Defendant was licensed as a Collection Agency by the State of Wisconsin's Division of Banking.

58. Defendants violated 15 U.S.C. §§ 1692e, 1692e(1), 1692e(9), and 1692e(10).

## COUNT II – WCA

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60. By using a letter which falsely represented REV-1's licensing status in Exhibit A, Defendant used a communication which gave the appearance of being authorized or approved by a governmental agency.

61. Defendants violated Wis. Stat. § 427.104(1)(k).

## CLASS ALLEGATIONS

62. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by REV-1, (c) stating that REV-1 is licensed by the Division of Banking in Wisconsin, (d) seeking to collect a debt for personal, family, or household purposes, (e) on or after July 18, 2017 and up to and including July 18, 2018, (f) that was not returned by the postal service.

63. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

64. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA and/or the WCA.

65. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

66. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

67. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

68. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 18, 2018

                          **ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com